UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EIAN WRIGHT,

    Plaintiff,

v.                                                                    Case No. 21-10832
                                                             Honorable Victoria A. Roberts

LOUIS DEJOY,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT (ECF No. 17)

### I. Introduction

This action stems from alleged discrimination and harassment in the workplace. Eian Wright ("Wright"), a former employee of the United States Postal Service ("USPS" or "Postal Service"), filed this action against Louis DeJoy ("DeJoy"), the Postmaster General of the United States. Wright brings four claims: (I) disability discrimination under the Rehabilitation Act; (II) failure to accommodate under the Rehabilitation Act; (III) hostile work environment under the Rehabilitation Act; and (IV) race discrimination under Title VII.

The Court heard oral argument on September 7, 2022.

1

The Court **GRANTS** DeJoy's motion for summary judgment in its entirety.

## II. Background

Wright is a Black male formerly employed as a casual mail handler at a USPS delivery distribution center in Jackson, Michigan. His job duties consisted of unloading and sorting mail. As a casual employee, he did not enjoy collective bargaining protection. He was hired temporarily for a term not to exceed 360 days.

In March of 2018, a co-worker injured Wright when he pushed a mail cart into Wright's back. The resulting neck and back pain kept Wright off work for several days. Before returning to work, Wright's doctor provided work restrictions. The restrictions included no bending/stooping, no lifting/carrying over 15 pounds, and no pulling/pushing over 25 pounds. The Postal Service prepared a limited duty assignment for Wright consistent with his medical restrictions and Wright was placed on light duty.

Wright alleges that his supervisors and co-workers began harassing him about his disability and restricted duties. Wright says his supervisor, Mark Stairs ("Stairs"), told him that when people get injuries, they do not last long and that it would probably be impossible to keep him employed

because he could not do the work of a mail handler with his restrictions. (Pl. Compl., PageID.21, ECF No.6 ¶ 15-16). Wright also claims that co-workers made passing comments about his work restrictions being "BS." (Wright Dep. at 76 ¶ 8-25).

Because of his back injury, Wright says his doctor recommended that he lose weight to relieve pressure on his back. To do so, Wright drank apple cider vinegar and water. This vinegar and water mixture was not a weight loss diet prescribed by his doctor but Wright's natural way to lose weight. Wright says he told his doctor about his plans to follow the natural diet. The drink made him go to the restroom every hour. After noticing that Wright would be missing from his assigned post for long periods, Stairs and another supervisor, Earl Smith ("Smith"), questioned Wright about his whereabouts during these long breaks. Stairs and/or Smith sent Wright home three times because he was missing from his assigned post for extended periods.

Stairs and Smith had approximately five "job discussions" with Wright about his restroom usage, extended breaks, attendance, and failure to follow instructions.

On September 19, 2018, Stairs observed Wright taking notes in a personal notebook at his workspace. Stairs told Wright he could not have

his personal things on the floor. Wright says Stairs instructed him to show him what was in the notebook, but Wright refused because the notebook contained personal information. Instead, Wright offered to put the notebook away to comply with Stairs' orders. Wright says that this offer was not good enough for Stairs. When Wright refused to share the contents of the notebook, Stairs told him to turn in his badge and leave the building. Wright assumed he was fired.

A few days later, Stairs and Wright attended an unrelated EEOC mediation. After the mediation, Stairs told Wright that he could return to work on October 1, 2018. Stairs sent Wright two letters confirming this. (Exhibit 18 – 9/28/18 Letter and Exhibit 19 – 10/2/18 Letter). Wright did not report.

On December 14, 2018, after Wright did not report to work for twelve weeks, Stairs issued a notice of separation removing Wright from his employment effective December 21, 2018 for failure to adhere to attendance regulations. (Exhibit 20 – Notice of Separation).

### III. Legal Standard

Under Federal Rule of Civil Procedure 56(a), "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." The movant bears the initial burden to inform the Court of the basis for the motion and must identify portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies his burden, the nonmoving party must set forth specific facts showing a genuine issue of material fact. *Id*. at 324. The nonmoving party must also respond with a sufficient showing that establishes the essential elements of the case. Fed.R.Civ.P 56(c), 28 U.S.C.A. If the nonmoving party fails to establish the elements of its case or show a genuine dispute of a material fact, summary judgment is appropriate.

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Unsupported, conclusory statements are insufficient to establish a factual dispute to defeat summary judgment, as is the mere existence of a scintilla of evidence in support of the nonmovant's position; the evidence must be such that a reasonable jury could find in its favor. *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009); *Anderson,* 477 U.S. 242, 252.

In deciding a summary judgment motion, the Court "views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court only needs to consider the cited materials, but it may consider other evidence in the record. Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

### IV. Analysis

Wright brings three claims under the Rehabilitation Act: (1) disability discrimination; (2) harassment based on disability; and (3) failure to accommodate. He brought one race-based discrimination claim under Title VII and a race harassment claim first raised in his Response Brief, but at the hearing, he stated his intention to abandon these claims. Accordingly, Wright's race claims are **DISMISSED**.

The Court considers the remaining claims.

### A. The Americans with Disability Act and Rehabilitation Act

When DeJoy moved for summary judgment, Wright responded by defending his disability discrimination claim under the Americans with

6

Disability Act ("ADA") instead of under the Rehabilitation Act ("RA"). Courts and claimants often analyze ADA and RA claims together, but that does not mean they are always interchangeable.

Congress passed the RA in 1973. The RA protects disabled individuals from discrimination and covers any federal entity and any entity receiving federal funding. Seventeen years later, while keeping the RA intact, Congress passed the more expansive ADA. The ADA closely follows the RA framework, but differs in two important ways.

The first difference is the covered entities under the Acts. The ADA does not cover most federal employers, while the RA does. Thus, an entity like the USPS is only subject to the RA, while some corporations might be subject to both.

The next difference is the causation standard. This Circuit held that the ADA and RA have different causation standards for proving discrimination. *See Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 315 (6th Cir. 2012). The ADA requires that discrimination occur "because of" a plaintiff's disability, while the RA requires that discrimination occur "solely by reason of" a plaintiff's disability. *Id*. Thus, how plaintiffs prove discrimination differs based on which Act they rely upon.

Even though Wright filed his claim under the RA, his decision to defend the summary judgment motion using the ADA is not fatal to his claim. The Sixth Circuit recently held that federal employees bringing discrimination claims against a federal entity may use the ADA causation framework when asserting a RA claim. *Bledsoe v. Tennessee Valley Auth. Bd. of Directors*, 42 F.4th 568, 581 (6th Cir. 2022). Effectively, the court in *Bledsoe* eliminates the distinction between the ADA and the RA for federal employees like Wright suing federal employers. For claimants like Wright, the causation standard under either the RA or ADA is "because of."

However, the Court need not discuss or apply any causation standard since Wright fails to establish a key element of his claim.

### B. Disability Discrimination under the Rehabilitation Act: Count I

Under the Rehabilitation Act, Wright can establish a prima facie case of disability discrimination by showing that: (1) he has a disability; (2) he is otherwise qualified with or without accommodation; (3) he suffered an adverse employment action; (4) his employer knew or had reason to know of his disability; and (5) he was replaced by a nondisabled person, or his position remained open. *Jones v. Potter*, 488 F.3d 397, 404 (6th Cir. 2007).

Wright may also satisfy the fifth element by showing that similarly situated nonprotected employees were treated more favorably. *Id*.

Wright argues that he establishes a prima facie case for discrimination. He says he is disabled, his employer knew of his disability, and he is otherwise qualified for the position. (EFC No.1, PageID.6). He also says that job discussions with Stairs, being sent home when he did not share his notebook with Stairs, and having his shifts cut were all adverse employment actions. (ECF No. 17, PageID.17). Wright points to three employees he claims are similarly situated but treated more favorably.

Without conceding that Wright is disabled or otherwise qualified for the position, DeJoy argues that Wright cannot establish a prima facie case for disability discrimination because Wright failed to show that he was treated differently than a similarly situated employee. (ECF No. 17, PageID.108). DeJoy also argues that Wright cannot show that a nondisabled person replaced him or that his position remained open. DeJoy is correct.

Wright does not allege or present evidence that similarly situated nonprotected employees were treated differently. In his interrogatories, Wright identified three employees – Matt (last name unknown), Julie

9

Modelin, Adam Woods – as similarly situated employees who were treated more favorably. (Pl. Interrogatories, Exhibit 2, ECF No.19-3, PageID.457).

"To be deemed 'similarly-situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d, 577, 583 (6th Cir. 1992). In his response brief, Wright does not discuss how the three identified individuals were similarly situated and treated more favorably. That is Wright's burden, and he failed to carry it.

Furthermore, the employees identified in interrogatories are career mail handlers; Wright was a casual employee. (ECF No. 17, PageID.109). Unlike career employees, casual employees are not guaranteed hours and are sent home if no work is available. (Stairs Dep. at 11:12-12:4, ECF No. 17, PageID.109). The employment standards differ based on employment status.

In *Talley v. U.S. Postal Service*, 720 F.2d 505, 507 (8th Cir. 1983), the Eight Circuit held that "career employees, through a corrective and

progressive form of discipline, are given the opportunity to improve their performance." *Id*. at 507. In contrast, casual employees, "because of the short-term nature of the position, are discharged following the commission of a serious offense." *Id*. For this reason, the Eighth Circuit concluded casual and career employees are not similarly situated. *Id*. This Court abides by that decision.

Nor does Wright show that his position remained open or that he was replaced following any of the adverse employment actions he alleges. At the hearing, Wright argued that his position remained open following his discharge on September 19, 2018, when he refused to share the contents of his notebook, and Stairs told him to turn in his badge and leave ("the notebook incident").

Assuming that the notebook incident led to Wright's termination, he must show that his position remained open or he was replaced by a nondisabled person following the termination. He fails to do so. He does not provide a job listing that shows the position was open following the notebook incident. He does not list any employee who replaced him. Without evidence, Wright's bare assertion at the hearing is not enough to withstand summary judgment. *Anderson,* 477 U.S. 242, 252.

The same is true no matter which adverse employment action Wright relies on; he cannot satisfy the final element of his prima facie case for disability discrimination.

The Court **GRANTS** DeJoy's motion for summary judgment on Count I.

### C. Failure to Accommodate under the Rehabilitation Act : Count II

Wright alleges he made requests for reasonable accommodations by requesting: (1) work within his physical and medical restrictions; (2) allowance to use the restroom more frequently; and (3) "other reasonable accommodations." (ECF No. 6, PageID.25). DeJoy says Wright received a limited duty assignment consistent with his medical restrictions, and Wright made no further requests for accommodations. (ECF No. 17, PageID.116).

Importantly, Wright failed to address DeJoy's argument that Wright made no additional accommodation request. "[A] plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Michigan, Inc.*, 545 F.App'x. 368, 372 (6th Cir. 2013). The Court considers Wright's failure to accommodate claim as abandoned.

Even if the Court considered the claim, Wright cannot show that the USPS failed to provide a requested accommodation. When asked in interrogatories to state any requests for accommodations made, Wright said he submitted medical records to Stairs and Smith, and they told him to follow the doctor's instructions. (Wright's Br. Exhibit 2, ECF No. 19-3, PageID.457 ¶ 7). After they received Wright's medical records, Stairs and Smith put him on light duty consistent with the medical restrictions. Wright did not make additional requests for accommodations. Wright affirms that there were no accommodations he requested and did not receive. (DeJoy Br. Exhibit 1, ECF No. 17-2, PageID.143 ¶ 11-13).

In an unpublished opinion, the Sixth Circuit held that an employee's claim must be dismissed if he fails to identify and request a reasonable accommodation. *Johnson v. Cleveland City School Dist.*, 443 F.App'x. 974, 983 (2011). Wright's failure to request a reasonable accommodation is fatal to his claim.

The Court **GRANTS** DeJoy's motion for summary judgment on Count II.

### D. Harassment based on disability under the Rehabilitation Act: Count III

Wright alleges harassment based on his disability. He says he was subject to unwelcome comments about his work restrictions by co-workers and supervisors. (ECF No. 19, PageID.2). Wright says some of his co-workers called his restrictions "BS." He also claims Stairs said mail handlers like Wright do not last long on light duty restrictions. Wright says Stairs and Smith harassed him because of his frequent bathroom use, and on one occasion, he was harassed in the bathroom. (*Id.*, PageID.5-6). Wright also says his work restriction listed on the work schedule as "lduty" is harassment.

DeJoy argues that these discussions and actions from Stairs and Smith are unrelated to Wright's but stem from his job performance. Dejoy also says that even if these discussions and the other events Wright points to were true and related to his disability, they are not severe enough to establish a disability harassment claim. DeJoy is correct.

To establish a prima facie case for a hostile work environment claim under the Rehabilitation Act, Wright must establish: (1) he was disabled; (2) he was subject to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment unreasonably interfered with his work performance; and (5) defendant either knew or should have known about

the harassment and failed to take corrective measures. *Plautz v. Potter*, 156 Fed.App'x.812, 818 (6th Cir. 2005).

To constitute a hostile work environment, the workplace must be "permeated with 'discriminatory intimidation, ridicule, and insult' that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993). The Court must consider the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002).

Wright says he was "subjected to disparate treatment, constantly bothered for going to the restroom, and on one occasion he was harassed in the bathroom." (ECF No. 19, PageID.407). In his testimony, Wright discusses four instances when either Stairs or Smith approached him asking where he was after noticing his absence from the floor for an extended period. After telling the supervisors he was in the bathroom, Stairs or Smith told him to punch out and leave for the day.

This testimony alone is insufficient to establish that Wright was subject to harassment because of his disability. These four discussions do not rise to the level of a workplace permeated with intimidation, ridicule, or insults. There are no facts "that a reasonable person would find hostile or abusive." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

This conclusion is the same for the other events Wright relies on to prove harassment. The "passing comments" by co-workers and comment by Stairs are not severe enough to establish a hostile work environment claim. Stairs listing "lduty" next to Wright's name on the work schedule is also not sufficiently severe under the standard set out in *Harris.* Especially considering Stairs removed the notation when Wright asked. (EFC No. 19, Page.ID 7). Even taken together, these events do not rise to the level of a workplace permeated with intimidation, ridicule, or insults.

Even if the events Wright discusses were sufficiently severe, there is no evidence that any of this harassment unreasonably interfered with Wright's work performance; Wright merely says it did. Again, Wright's bare assertion without evidence is not enough. *Anderson,* 477 U.S. 242, 252.

Wright presents his disability harassment claim—and others in his submissions to this Court— "in the most skeletal way, leaving the court

16

to...put flesh on its bones." *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir.1995). The Court declines to do so.

The Court **GRANTS** DeJoy's summary judgment motion on Count III.

## V. Conclusion

The Court **GRANTS** DeJoy's motion for summary judgment in its entirety. (ECF No. 37).

                                        s/ Victoria A. Roberts
                                        Victoria A. Roberts
                                        United States District Judge

Dated: September 19, 2022